JOSEPH LOEB et al., Respondents, v. FRANK R. KEYES and
CORA W. KEYES, Appellants.

SALE — AGREEMENT BETWEEN VENDOR AND VENDEE — VENDEE'S
NOTES AND CUSTOMERS' PAPER.   An agreement between the vendors and
vendee of merchandise provided that the vendors should from time to
time sell and deliver to the vendee goods, for which he should give his
own indorsed notes as well as his customers' paper, and that he "should
be credited with such notes and customers' paper, and as the same came
due from time to time, whenever there was a balance to the credit of" the
vendee "sufficient to take up any new note coming due," the same should
be taken up by the vendors and returned to him.   Held, that the "balance,"
in the event of which any new note of the vendee was to be surrendered,
was a balance in his favor resting upon credits from his own notes, as well
as from his customers' paper; and that in striking such balance the vendee
should not be charged with his own notes before they were due.

   Loeb v. Keyes, 86 Hun, 353, reversed.

   (Argued June 22, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the
Supreme Court in the fourth judicial department, entered May
23, 1895, affirming a judgment in favor of plaintiffs entered
upon the report of a referee.

   This action was commenced on the 12th of August, 1893,
to recover the amount of a promissory note, dated January
12th, 1893, whereby the defendant Frank R. Keyes promised
to pay to the order of the defendant Cora W. Keyes the sum
of $1,442.82 six months after date.   Said note was indorsed
by the payee and delivered to the plaintiffs before maturity.
The defendants claim that said note was not due when the
action was commenced, and that it had in fact been paid by
certain credits made pursuant to an arrangement between the
parties.

   The action was tried before a referee who reported in favor
of the plaintiffs, and the judgment entered upon his report
having been affirmed by the General Term, the defendants
appeal to this court.

*H. D. Hinman* for appellants. The note in suit was paid when it became due. (*Nat. Park Bank* v. *Seaboard Bank*, 114 N. Y. 28, 35; *Stone* v. *Seymour*, 15 Wend. 20; *Dows* v. *Moorewood*, 10 Barb. 183; *Allen* v. *Culver*, 3 Den. 284, 293.) There was an account stated between plaintiffs and defendants, and plaintiffs are bound thereby, having charged off the note in suit. (*Liscomb* v. *Agate*, 67 Hun, 390; *Stenton* v. *Jerome*, 54 N. Y. 480.) The defendants can, and have the absolute right to, complain of the amount of the recovery. (*Roth* v. *Palmer*, 27 Barb. 652, 657; *Hare* v. *Van Deusen*, 32 Barb. 92, 99; *Prouty* v. *L. S. & M. S. R. R. Co.*, 85 N. Y. 272, 274, 275; *Dean* v. *M. E. R. Co.*, 119 N. Y. 540, 545.)

*Alex. Cumming* for respondents. The evidence sustains the facts found by the referee and the judgment entered herein. The note, its presentment, demand for payment, and refusal to pay and protest, were admitted, and it was incumbent on defendants to show by satisfactory evidence that it was paid. (18 Am. & Eng. Ency. of Law, 167; *Johnson* v. *Weed*, 9 Johns. 310; *Burkhalter* v. *Second Nat. Bank*, 42 N. Y. 538; *Vail* v. *Foster*, 4 N. Y. 312; *Van Ostrand* v. *Reed*, 1 Wend. 424; *East River Bank* v. *Butterworth*, 45 Barb. 476; *Bank of California* v. *Webb*, 94 N. Y. 467.)

VANN, J. During the years 1892 and 1893, the plaintiffs, who did business in the city of Philadelphia, sold certain goods to the defendant Frank R. Keyes, who did business in the city of Binghamton, under an arrangement, which, as stipulated upon the trial, was as follows: "It is stipulated that the arrangement between plaintiffs and defendant F. R. Keyes was that plaintiffs should from time to time sell and deliver to F. R. Keyes tobacco for which he should give his notes, indorsed by Cora W. Keyes, as well as such customers' paper as might be acceptable to the plaintiffs; and that he should be credited with such notes and customers' paper, and as the same came due from time to time, whenever there was a balance to the credit of F. R. Keyes sufficient to take up

any new note coming due, the same should be taken up by plaintiffs and returned to him, and these transactions should continue during the pleasure of the plaintiffs."

The learned referee construed this agreement to mean that although credit was to be given to Mr. Keyes both for his own notes and the notes of his customers, still, "as said Keyes' own notes became due from time to time, if he had sufficient credit with the plaintiffs on account of such customers' notes so credited to him, that his own notes should be taken up by plaintiffs and returned to him." In other words, he held that the "balance to the credit of F. R. Keyes," as used in the stipulated agreement, meant only such "balance" to the credit of Mr. Keyes as should arise on account of customers' notes, excluding altogether the credit on account of his own notes. The learned General Term, without argument, adopted this construction of the agreement, and upon this basis the judgments below are clearly right. If, however, the true construction of the agreement is that said "balance" was to rest upon credits from both sources, that is, Keyes' own notes as well as customers' notes, then the judgments are clearly wrong.

The agreement provided that Mr. Keyes should be credited "with such notes," that is, his own notes indorsed by his wife, "and customers' paper." Thus it is clear that both kinds of notes should make up the credit side of the account. A "balance" is the difference between the debits and credits of an account, and hence the "balance" meant by the agreement is the "balance" left after such credits have been made. If the parties meant what they said when upon the trial they stipulated that this was the agreement, we see no escape from the construction thus indicated. The "balance" meant by the parties necessarily contemplated what was left after all the notes made by Mr. Keyes and by third persons had been credited. The practical effect of the arrangement was that as fast as goods were sold to Mr. Keyes by the plaintiffs he gave his own notes, duly indorsed, for the amount. Subsequently as notes were given to him by his customers he trans-

ferred them to the plaintiffs, and both series of notes were credited to him. This, however, might result and did result in a double credit to some extent, which was guarded against by the provision that when one of Mr. Keyes' own notes became due, and the " balance " in his favor arising from the double credit was sufficient to take it up, the plaintiffs were bound to do so. This construction makes the agreement reasonable and fair to both parties. The construction thus far adopted, however, makes the agreement one-sided and unreasonable, for the plaintiffs, having the promise to pay of their purchaser for all the goods sold to him, such promise being duly secured by a responsible indorser, as well as other credits on the same account by reason of customers' notes, could not, in reason, ask him to pay a note of his own that fell due, if at the time the " balance " from both credits exceeded the amount of such note, because there would be no necessity for it, as the customers' notes, added to Mr. Keyes' own notes still left, would cover the entire claim of the plaintiffs. We think that the construction contended for by the appellants, which is confirmed by the course of dealing between the parties, is the correct one, and that when this suit was commenced the note in question was *functus officio* and the defendants were entitled to have the same surrendered, because the " balance " in their favor exceeded the amount of the note sued upon.

The forced " balance " in favor of plaintiffs, made by charging Mr. Keyes with his own notes before they were due, was not the " balance " contemplated by the agreement. By accepting his notes the plaintiffs extended the time of payment of the goods for which they were given. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521, 524.) They could not credit the notes and also charge them before they became due, as the charge would destroy the credit and the entries would have no practical effect. It was not until one of the notes became due that the last part of the agreement was called into action. If, then, the " balance " in favor of the defendants exceeded the amount of the note so falling due, that note

was to be surrendered, every other part of the account remaining *in statu quo* until something transpired to change it. Such is the situation disclosed by the record before us.

We think the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except BARTLETT, J., not voting, and MARTIN, J., not sitting.

Judgment reversed, etc.