(80 Misc. Rep. 649.)

### JACOBS v. MONATON REALTY INVESTING CORPORATION.

(Supreme Court, Appellate Term, First Department.   May 26, 1913.)

BANKS AND BANKING (§ 8*)—WHAT CONSTITUTES—"MORTGAGE LOAN OR INVESTMENT CORPORATION."

 Stock Corporation Law (Consol. Laws 1909, c. 59) § 6, gives stock corporations only the right to borrow money and contract debts when necessary for the transaction of their business or for the exercise of their corporate rights. General Corporation Law (Consol. Laws 1909, c. 23) § 10, provides that certificates of incorporation can only contain provisions which do not exempt the directors from the performance of any obligation imposed by law, and that no corporation shall exercise any corporate power not given ·by law. Section 22, as amended by Laws 1911, c. 771, provides that no corporation, unless formed under the Banking Law, shall possess the power of carrying on the business of receiving deposits. The Banking Law (Consol. Laws 1909, c. 2) defines the term "mortgage loan or investment corporation" to mean any corporation organized for the purpose of receiving any money from its members or others. An alleged certificate provided, in consideration of the payment of $107, annually or in monthly payments at the holder's option during the period of 10 years, the corporation agreed to pay to the recorded owner of the certificate at the expiration of such period $1,500, "and in addition thereto such proportion of the profits as the directors of the company

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

may consider just and equitable," and further recited that the payments on the certificate were accepted for investment in business and not deposit. *Held*, that the amount paid was intended as a deposit, so that the corporation engaged in the business of illegal banking.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 8.*]

Page, J., dissenting.

Appeal from City Court of New York, Special Term.

Action by Arthur Edward Jacobs against the Monaton Realty Investing Corporation. From an order granting a motion for judgment on the pleadings, and from the judgment, defendant appeals. Affirmed.

Argued April term, 1913, before GUY, GERARD, and PAGE, JJ.

William P. Maloney, of New York City, for appellant.

Gustav Lange, Jr., of New York City, for respondent.

GERARD, J. The complaint sets forth three similar causes of action; each being for money had and received, and based upon the payment by the plaintiff to the defendant of certain sums of money, the first two on cumulative profit-sharing certificates, and the third on a so-called gold certificate, all issued by the defendant. The defendant interposed a demurrer, to the effect that the facts alleged in each cause of action did not constitute a cause of action.

The only question raised is the question of law as to whether it was ultra vires for the defendant corporation to receive the moneys in question. If the defendant had no power to make these contracts, the contracts are void, and the plaintiff is entitled to recover back from the defendant the moneys paid under such agreement.

The defendant is incorporated under the Business Corporations Law (Consol. Laws 1909, c. 4), and is alleged in the complaint not to be incorporated under the Banking Law (Consol. Laws 1909, c. 2), of the state of New York. Stock Corporation Law (Consol. Laws 1909, c. 59), § 6, expressly limits the powers of stock corporations, and gives them only the right to borrow money and contract debts when necessary for the transaction of their business, or for the exercise of their corporate rights, privileges, or franchises, or for any other lawful purpose of the incorporation.

General Corporation Law (Consol. Laws 1909, c. 23) § 10, provides that no corporation shall possess or exercise any corporate powers not given by law or not necessary to the exercise of the powers so given, and provides that the certificate of incorporation can only contain provisions which do not exempt the directors and stockholders from the performance of any obligation or duty imposed by law; that is to say, the certificate of incorporation cannot give the corporation any greater powers than those to which it is entitled by law. Section 22 of the General Corporation Law, as amended by Laws 1911, c. 771, provides that:

"No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, except as permitted by such laws, shall by any implication or construction be deemed

to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, *of receiving deposits,* of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money," etc.

The Banking Law, in defining mortgage loan or investment corporations, provides:

"The term 'mortgage loan or investment corporation,' when used in this chapter means· any corporation other than an insurance corporation formed under the laws of this state or of any other state, and doing business in this state for the purpose of selling, or offering for sale, or negotiating bonds or notes secured by deed of trust or mortgages on real property, or choses in action owned, issued, negotiated or guaranteed by it, *or for the purpose of receiving any money* or property, either from its own members or from other persons, and entering into any contract, engagement or undertaking with them for the withdrawal of such money or property at any time with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain; and when applied to any foreign corporation doing business in this state shall include," etc.

In the case at bar the contract between the parties is evidenced by the alleged certificate, which constitutes their agreement. This provides that, in consideration of the payment of $107.36 annually, or, at his option, the sum of $9.20 each month, in advance, during the period of 10 years from date, the defendant promises to pay to plaintiff or the recorded owner of the certificate, at the expiration of the said period, upon presentation and surrender of the certificate, the sum of $1,500, "and in addition thereto such portion of the profits as the directors of the company may consider just and equitable." The certificate also contained a clause to the effect that it was subject to the "privileges and provisions" indorsed on the back. It was there stated that:

"The payments on within certificate being accepted by the company for investment in business, not for deposit, the owner has the following privileges," etc.

These are briefly the right to apply the certificate, at any time, with accrued interest, on the purchase of any real estate which the company may choose to sell to the holder of the certificate, a right to transfer the certificate, a right to get a paid-up certificate payable at the original maturity date, or payable in cash on 60 days' notice, according to a schedule annexed, and, in the event of the owner's death, the company agreed to pay to his representatives the total amount of the premiums paid, with 4 per cent. interest to the date of death, or the holder's legal representatives might continue the certificate to maturity by making the payments as above stated; also providing that, if any installment remains unpaid for six months, the certificate shall be nonforfeitable for five years from the date of default. A right was reserved to the company to terminate the certificate after the tenth or any later anniversary of its date, by paying up its amount with accrued interest, "together with such portion of the profits as may be apportioned thereto by the directors of the company." The certificate contains the further clause:

"In addition to the face value of this certificate at its maturity, it shall be entitled to, and the owner shall receive, such portion of the profits of the company as shall be apportioned thereto by the directors thereof."

In construing this certificate, it appears, in the first place, that there is no provision by which the holder is entitled to receive any of the profits of the business. There is a statement that he may receive such portion of the profits as the directors of the company may give; but there is no obligation whatever on the part of the directors of the company to give anything, and therefore these clauses, which occur three or four times in the certificate, amount to absolutely nothing. Secondly, the company claims that this is not a deposit, because there is language in the certificate to the effect that the payments are accepted by the company for investment in business, not for deposit; but if the contract between the parties shows a mere deposit, no self-serving statement made by the company can change the relations between the plaintiff and the company.

There is no question whatever in my mind but that this company is violating the provisions of the Banking Law and is transacting business as a mortgage loan or investment corporation, as that form of company is defined in the Banking Law. In the case of Chapman v. Lynch, 156 N. Y. 551, 51 N. E. 275, the American Dairy Salt Company, Limited, issued to plaintiff a pass book in which was entered: "Frank D. Chapman, in Special Account with the American Dairy Salt Company, Limited." Under the credit column was entered: "February 11, 1882. Cash, $10,880.90."

And semiannually thereafter interest was credited at the rate of 6 per cent. It was there held that the corporation, in accepting the funds of the plaintiff in special account upon deposit, exceeded its corporate power and engaged in a business in which it was not authorized; that its contract was ultra vires, and therefore plaintiff's right of action for the moneys delivered to the corporation accrued at once.

These provisions of the Banking Law were enacted to restrain illegitimate and improper banking. I am convinced that the complaint shows that the defendant here is engaged in the business of illegitimate and improper banking, and that the order and judgment appealed from should be affirmed.

Order and judgment affirmed, with $10 costs and disbursements, with leave to defendant to plead over within five days after service of a copy of the order entered herewith, with notice of entry thereof, upon payment of costs in this court and in the court below, with leave to defendant to appeal to the Appellate Division, First Department.

GUY, J., concurs.

PAGE, J. (dissenting). I dissent. The defendant is a stock corporation, and as such has the power—

"to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed." Stock Corporation Law (Laws 1909, c. 61) § 6.

The company is incorporated for the purpose of buying and selling and dealing in real estate. To obtain money with which to carry on

its business, it has induced various persons, including this plaintiff, to enter into an agreement whereby they pledge themselves for a definite period to advance money in small installments, payable monthly or annually, in consideration of which the company issues a certificate wherein it promises to pay to the holder at the expiration of the stated period $1,000 (or some other sum according to the size of the installment), "which sum includes interest on said payments at the rate of 6 per cent. per annum." There are annexed to the agreement certain added stipulations, most of which are for the benefit of the holder of the certificate. For example, the holder may surrender it at any time, to be applied toward the purchase price of real estate sold by the company. He may transfer it to any other person by indorsement and record upon the company's books. After 2 years he may surrender it for a new paid-up certificate, or for cash upon 60 days' notice to the company.

In my opinion there is nothing in the transaction to distinguish it from the ordinary case of a loan secured by a debenture. The money is loaned to the company by the holder of the certificate in small installments for use in its legitimate real estate business, and at the termination of the agreement the sum total of all the installments loaned is repaid, with interest. Unless it be said, therefore, that every corporation not incorporated under the banking laws, that borrows money and issues an obligation for its repayment, is guilty of an ultra vires act, some fact must appear to remove this case from the accepted rule.

The result reached by Mr. Justice GERARD seems to be predicated upon a conclusion that the payment of this money to the company by the plaintiff, and receipt by him of the certificates, was equivalent to a receiving of "deposits" within the meaning of section 22 of the General Corporation Law, as amended by Laws 1911, c. 771, which provides that:

"No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state, * * * shall by any implication or construction be deemed to possess the power * * * of *receiving deposits*."

It is stated in the certificate issued by the defendant:

"The payments on within certificate being accepted by the company for investment in business, not for deposit, the owner has the following privileges. * * *"

While I agree that this statement in itself would have no effect, did it appear clearly that the contract between the parties and their relations with each other showed a mere deposit, I am of the opinion that there is nothing in the contract or the known relations of these parties which, in the face of an express declaration to the contrary, can convert the transaction from an ordinary loan for the purpose of investing in defendant's business to a bank deposit, and make it an ultra vires act.

The distinction between a loan and a deposit of money to be used by the depositary is not a broad one, but is sufficiently so that the law recognizes certain rules as applicable to each. By a loan of money is

meant the delivery by one party to, and the receipt by the other party of, a given sum of money, upon an agreement, express or implied, to return the sum loaned, with or without interest. A loan is usually made at the request and for the benefit of the borrower, and is to be paid on the due date without demand. Where no time of payment is fixed by the contract of loan, the debt is instantly due, and an action may be brought without demand; the bringing of the action being a sufficient demand to entitle the lender to recover. Even if the loan is, by the terms of the agreement, to be paid on demand, yet no special demand is necessary; the money being due without it. As the term is now used, a deposit of money is the delivery of a sum of money by one party to another for safe-keeping, and payable, not in the money specifically deposited, but in an equal amount, with or without interest, upon the demand or order of the depositor. Payne v. Gardiner, 29 N. Y. 146, 167, 168.

The distinctions between the two, therefore, are: (1) That the loan is for the benefit of the person who receives the money, while the deposit is for the benefit of the person who delivers the money. (2) The loan is payable without demand; the deposit only on demand. (3) As to the loan the statute of limitations begins to run from the due date, and, if there is no due date expressed, then immediately; while on a deposit the statute of limitations does not begin to run until there has been a demand.

Therefore, when we consider a transaction wherein money is delivered to a corporation, to determine whether the money was a loan, and hence within its general corporate powers, or a deposit, and without its corporate powers, unless it is a banking corporation, we must consider the purpose of the delivery and the primary object of the corporation in receiving it. If we find that, in a given case, the use to which the money is devoted is merely incidental, and that the primary object of the corporation is receiving, collecting, and dealing in money, it may safely be said that a banking business, within the definition of the Banking Law, is being transacted, and the act of the corporation is ultra vires, unless it has a banking charter. If, on the other hand, it appears that the corporation is regularly engaged in some business or trade, and is obtaining loans of money as a means of conducting its business and merely incidental thereto, the transaction is authorized by section 6 of the Stock Corporation Law, quoted above, and must be held to be a valid one.

Upon the facts of the case at bar, as disclosed by the record, I am unable to say as a matter of law that the defendant is engaged in receiving deposits in violation of the statute, and am of the opinion that upon this demurrer it must be regarded as a legitimate real estate company, borrowing money for the purposes of its business:

It has been said that the defendant company comes within the definition of a mortgage loan or investment corporation, contained in section 2 of the Banking Law, as follows:

"Any corporation other than an insurance corporation formed * * * for the purpose of selling, offering for sale or negotiating bonds or notes secured by a deed of trust or mortgages on real property or choses in action owned, negotiated or guaranteed by it, or for the the purpose of receiving any

money or property either from its own members or from other persons, and entering into any contract engagement or undertaking with them for the withdrawal of such money or property at any time with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain. * * * "

It would be absurd to suggest, however, that any corporation incidentally "entering into any contract * * * for the payment to any person of any sum of money at any time, either fixed or uncertain," is engaging in the banking business, for such an interpretation would nullify section 6 of the Stock Corporation Law, and would disrupt half of the business of this city and state. The distinction must here be drawn again between a corporation incidentally engaging in such transactions, in order to raise money for their own use, and those "formed for the purpose" of doing so, and dealing in such transactions as their principal business.

The cases of Chapman v. Lynch, 156 N. Y. 551, 51 N. E. 275, and Chapman v. Comstock, 134 N. Y. 509, 31 N. E. 876, relied upon by the respondent, merely hold that, where a person deposited a sum of money with a business corporation, not as a loan, but for safe-keeping and for the convenience of the depositor, subject to withdrawal upon demand, and for which he received a regular pass book, like those issued by a bank, in which interest was credited at regular intervals, the transaction was a "deposit," and was ultra vires. The cases contain no discussion of the distinguishing elements of loans and deposits; but, tested by the rules above discussed, the transaction was clearly a deposit. They are of no value in determining this case.

I am of the opinion that the complaint fails to state a cause of action against the defendant, as no facts are alleged therein which, without further allegations as to the nature of the defendant's business, are sufficient to show that the transactions set forth are ultra vires.

The judgment and order should be reversed, and the demurrer sustained.