(160 App. Div. 449)

JACOBS v. MONATON REALTY INVESTING CORPORATION.

(Supreme Court, Appellate Division, First Department.  December 31, 1913.)

1. BANKS AND BANKING (§ 8*)—UNAUTHORIZED BANKING—STATUTORY PROVISIONS.

Banking Law (Laws 1892, c. 689; Consol. Laws, c. 2), § 1, provides that it shall be applicable to all corporations specified in the next section. Section 2 defines, among others, the terms "bank," "savings bank," "building and mutual loan corporations or associations," "co-operative loan associations," and "mortgage loan or investment corporations." Section 8 provides that every corporation specified in section 2 shall be subject to the inspection and supervision of the superintendent of banks. Section 30 provides that no such corporation shall be incorporated or transact any business without the written approval of the superintendent, and without his written certificate that it is authorized to transact business. Section 171 states the object and purpose of co-operative savings and loan associations as to the encouragement of industry, frugality, home building, and savings, the accumulation of savings, the loaning thereof to members, etc. Section 199 authorizes mortgage loan or investment companies to sell or negotiate bonds or notes secured by deed of trust or mortgages on real property, or choses in action owned, issued, negotiated, or guaranteed by it, to receive money or property either from stockholders or others, in installments or otherwise, and to contract with them for the withdrawal thereof at any time with any increase thereof, or for the payment to them or any person of any sum of money at a time either fixed or uncertain. Business Corporation Law (Laws 1892, c. 691; Consol. Laws, c. 4) § 2, provides for the incorporation of corporations for any lawful business purpose, other than moneyed corporations or those provided for by the banking, insurance, etc., laws. General Corporation Law (Laws 1892, c. 687; Consol. Laws, c. 23) § 10, provides that no corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given, and section 22 provides that no corporation, except one formed under or subject to the banking laws, shall, by any implication or construction, be deemed to possess the power of carrying on the business of discounting bills, receiving deposits, etc. Stock Corporation Law (Laws 1892, c. 688; Consol. Laws, c. 59) § 6, authorizes every stock corporation to borrow money or contract debts when necessary for the transaction of its business, or for any other lawful purpose of its corporation. *Held,* that a certificate issued by a realty investing corporation not organized under the banking law, by which, in consideration of annual or monthly payments for 10 years, it promised to pay a specified sum, which would include interest

on such payments, together with such portion of the profits as the directors might consider just and equitable, with the privilege to the holder before maturity of applying the payments with accrued interest in the purchase of real estate for sale by the corporation, or of exchanging it for a paid-up certificate payable at maturity, or for cash on 60 days' notice in writing after two years, according to a schedule thereto attached, or, in the event of the owner's death, recovering the premiums paid with interest, had attributes of certificates issuable only by mortgage loan and investment corporations, co-operative savings and loan associations, building lot corporations, or savings banks, and also some of the attributes of insurance policies, and did not evidence a loan within Stock Corporation Law, § 6, and hence was ultra vires.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 8.*]

**2. BANKS AND BANKING (§ 8*)—UNAUTHORIZED BANKING—POWERS—BORROWING MONEY.**

Stock Corporation Law (Laws 1892, c. 688; Consol. Laws, c. 59), § 6, authorizing every stock corporation to borrow money or contract debts when necessary for the transaction of its business, or for any other lawful purpose of its incorporation, does not authorize a corporation, not organized under the banking law, to borrow money to carry on business which can only be conducted by a corporation organized under the banking law.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 8.*]

**3. BANKS AND BANKING (§ 8*)—UNAUTHORIZED BANKING—STATUTORY PROVISIONS.**

A certificate issued by a realty investing corporation, by which in consideration of the payment of $100, it promised to pay that sum in 10 years, with interest semiannually, together with a share in the profits of the corporation as determined by the directors, with the right reserved to terminate it at any time after five years, and with the right to the owner to surrender it upon any interest payment date after two years for its face value in cash, less 2 per cent. per annum for the unexpired time to the maturity thereof, and which further provided that it might, at any time, be applied in the purchase of real estate for sale by the company, was not a promissory note, but a certificate of deposit, and its issuance by a corporation, not organized under the banking law (Laws 1892, c. 689; Consol. Laws, c. 2) was ultra vires.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 8.*]

**4. CORPORATIONS (§ 487*)—ULTRA VIRES CONTRACTS—RECOVERY OF PAYMENTS.**

Where a corporation not authorized to do a banking business received deposits for specified times, they could be recovered before the expiration of the stipulated periods, by an action for money had and received.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

Ingraham, P. J., and Hotchkiss, J., dissenting.

Appeal from Appellate Term, First Department.

Action by Arthur Edward Jacobs against the Monaton Realty Investing Corporation. An order granting plaintiff's motion for judgment on the pleadings and the judgment thereon were affirmed by the Appellate Term (80 Misc. Rep. 649, 141 N. Y. Supp. 1033), and defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Thornton J. Theall, of New York City (Charles F. Brown, of New York City, of counsel), for appellant.

Gustave Lange, Jr., of New York City, for respondent.

CLARKE, J.   [1] This action was instituted in the city court. The complaint sets up three causes of action: First. That the defendant is a business corporation organized under the laws of the state of New York. That it is not incorporated under the Banking Law, "being chapter 10 of the Laws of 1909, nor of the former Banking Law, chapter 689 of the Laws of 1892, and the acts amendatory thereof and supplemental thereto." That heretofore and after the 1st day of April, 1907, and on or about the 23d day of February, 1909, the defendant made an agreement in writing with plaintiff, a copy of which is hereto attached, marked "Exhibit A," wherein and whereby the defendant contracted, engaged, and undertook and agreed with the plaintiff, for and in consideration of the payment by the plaintiff to it of the sum of $107.36 annually, or the optional sum of $9.20 each month in advance during the period of 10 years from the date thereof, that it would pay to the plaintiff or to the recorded owner of said instrument, at the expiration of said 10 years, upon the surrender thereof, the sum of $1,500, subject to the privileges and provisions indorsed thereon and made a part of said instrument. That pursuant to said agreement the plaintiff had paid to the defendant the sum of $377.20 as follows (enumerating a monthly payment of $9.20 from February 23, 1909, to July 23, 1912). That plaintiff has duly demanded the return of said moneys, but no part thereof has been paid. The second cause of action is similar thereto, with the exception of the amount to be paid at the end of 10 years, which was to be $1,000 and the annual or monthly amount which was $71.57 or $6.13 each month.

Exhibit A is headed:

"United States of America, No. 2363, $1,500.   Monaton Realty Investing Company, Incorporated, State of New York.   This is to certify that, in consideration of the payment of $107.36 annually (or of the optional sum of $9.20 each month) in advance during the period of 10 years from the date hereof, Monaton Realty Investing Corporation hereby promises to pay to Arthur Edward Jacobs, or the recorded owner hereof, at the expiration of said period, upon presentation and surrender of this certificate to the company at its head office in the city of New York the sum of $1,500 in gold coin of the United States of the present standard of weight and fineness, which sum includes interest on said payments at the rate of six per cent. per annum as herein provided, and in addition thereto such portion of the profits as the directors of the company may consider just and equitable.   This certificate is subject to the 'Privileges and Provisions': The payments on this certificate being accepted by the company for investment in business, not for deposit, the owner has the following privileges of surrender before maturity: (A) At any time, with accrued interest, to apply in purchase of real estate for sale by the company, subject to its regular selling conditions.   (B) At any time, with accrued interest for transfer to another person by indorsement and record thereof on the company's books, acknowledged thereon.   (C) On the second or later anniversary for a paid-up certificate payable at the maturity date of the original or for cash on sixty days' notice in writing to the company according to the schedule hereto attached.   (D) In the event of the owner's death the total amount of the premiums paid with four per cent. interest to the date of death for cash, or his legal representatives may continue this certificate to maturity by complying with its conditions.   Provided always that no surrender, transfer or other privilege above shall apply while any installment remains due and unpaid.

"Interest Credits.   Interest on this certificate except as otherwise specified, will be computed on the net annual rate installments (considered as paid yearly in advance) at the rate of six per cent. per annum, compounded and

credited annually, thus making with the annual payments the face value of this certificate at its maturity.

"Installment Payments. All installments are payable when due without notice. * * * The time for paying any installment due may be extended six months by adding one-half of one per cent. on the amount due for every fifteen days or fraction thereof in part to offset credits given for the full time.

"Certificate Nonforfeitable. If any installment remains unpaid six months this certificate shall be nonforfeitable for five years from date of default, and (A) Provided two full years' payments have been made, the company shall, upon demand and the surrender of this certificate for cancellation, issue a paid-up certificate for the amount as stated in the schedule hereto attached. (B) Provided less than two full years' payments have been made, the company shall, upon demand and the surrender of this certificate for cancellation, issue to the owner hereof a new certificate of same amount and term and credit on it the sum of the net annual rate installments paid thereon, provided that at least one additional premium shall then be paid in advance on such new certificate. The company reserves the right to mature and terminate this certificate (if issued for a period longer than ten years) on the tenth or any later anniversary of its date by mailing to its recorded owner written notice sixty days prior thereto, and thereupon its full value for payments and accrued interest shall become due and payable, together with such portion of the profits as may be apportioned thereto by the directors of the company.

"Participation in Profits at Maturity. In addition to the face value of this certificate at its maturity, it shall be entitled to and the owner shall receive such portion of the profits of this company as shall be apportioned thereto by the directors thereof."

And there is attached a table of cash and maturity values for each year up to and including the tenth.

The third cause of action alleged:

"That heretofore, and on or about the 23d day of February, 1909, the plaintiff paid to the defendant the sum of $100, in consideration of which the defendant made an agreement, in writing, a copy of which is hereto annexed and marked 'Exhibit C'; * * * that the plaintiff had demanded of defendant the return of said sum of $100, but no part thereof has been paid, except that defendant has paid the plaintiff the sum of $21 interest in installments of $3 semiannually on the 23d days of August and February of each year succeeding the 23d of February, 1909, up to and including the 23d day of August, 1912."

Exhibit C is as follows:

"United States of America, State of New York, No. C—148, $100. Monaton Realty Investing Corporation, Incorporated. For value received, the Monaton Realty Investing Corporation promises to pay to Arthur Edward Jacobs or to the record owner hereof, at the expiration of ten years from the date of this certificate, upon its presentation and surrender to the Night and Day Bank in the city of New York, $100 in gold coin of the United States of the present standard of weight and fineness, with interest thereon at the rate of six per cent. per annum from date, payable semi-annually, in like gold coin at the Night and Day Bank in the city of New York, on presentation and surrender of the annexed coupons as they severally become due. In addition to the six per cent per annum guaranteed by this certificate the company hereby agrees to give to the record owner hereof at its maturity, a share in the profits of the company, such apportionment of profits to be determined by the directors thereof and to be conclusive. The company reserves the right on or after the expiration of five years from the date hereof to terminate this certificate on any interest payment date, by mailing to its record owner written notice six months prior thereto, and the company hereby agrees upon presentation of this certificate with all unpaid coupons attached thereto, at the office in the city of New York, to pay therefor its full face value, together with such proportionate share of the profits up to the time of such cancellation as shall be

determined by the directors thereof. This certificate and all unpaid coupons may, upon like notice from its record owner to the company, be surrendered upon any interest payment date after two years, for its full face value in cash, less two per cent. per annum for the unexpired time to the maturity thereof. This certificate may at any time be applied in the purchase of real estate for sale by the company, subject to its regular selling conditions. It may be transferred by indorsement and record thereof on the company's books acknowledged hereon."

The defendant demurred to each of these causes of action as not stating facts sufficient to constitute a cause of action, whereupon plaintiff moved for judgment on the pleadings, which was granted. On appeal this judgment was affirmed by the Appellate Term, by a divided court, and this appeal was allowed from said determination.

The Banking Law (chapter 689, Laws of 1892, now chapter 10, Laws 1909; chapter 2 of the Consol. Laws) provides that:

"This chapter  *  *  *  ·shall be applicable to all corporations and individuals specified in the next section."

Section 2 is as follows:

"Definitions. The term bank, when used in this chapter, means any moneyed corporation authorized by law to issue bills, notes or other evidences of debt for circulation as money, or to receive deposits of money and commercial paper and to make loans thereon and to discount bills, notes or other commercial paper, and to buy and sell gold and silver bullion, or foreign coins or bills of exchange. The term individual banker, when so used means a person who has complied with the requirements of law, and is authorized by the banking department to engage in the business of banking, and is subject to the supervision of the superintendent of banks and the banking law. The term savings bank, when so used, means a corporation only authorized by the laws of this state to receive money on deposit and pay such rates of interest thereon, and to invest the same in such securities and obligations, as may be prescribed by law. The term trust company when so used means any domestic corporation formed for the purpose of taking, accepting and executing such trusts as may be lawfully committed to it and acting as trustee in the cases prescribed by law, and receiving deposits of moneys and other personal property, and issuing its obligations therefor, and of loaning money on real or personal securities. The term building and mutual loan corporations or associations, when so used, means a corporation formed for the purpose of accumulating a fund for the purchase of real property, the erection of buildings, or the making of other improvements on lands,  *  *  ·  or to aid its members in acquiring real property, making improvements thereon or removing incumbrances therefrom, or of accumulating a fund to be returned to its members in specified cases. The term co-operative loan association, when so used, means a corporation formed for the purpose of encouraging industry, frugality, home-building and the saving of money by its members, the accumulation of savings, the loaning of such accumulations to its members, and the repayment to each member of his savings when they have accumulated to a certain sum, or at any time when he shall desire the same, or the association shall desire to repay the same. The term building and mutual loan corporations or associations, and co-operative loan associations, shall include every corporation, company or association doing business in this state and having for a part of its title or name the words building association, building and loan association, savings and loan association, saving association or co-operative bank, and every corporation, company or association whose stock is wholly or in part payable by a cumulative fund in regular or periodical installments, or which is doing business in the form and of a character similar to that authorized by articles five and six of this chapter organized or incorporated in any state or country outside of this state. The term mortgage, loan or investment corporation, when so used, means any corporation other than an

insurance corporation formed under the laws of this state or of any other state, and doing business in this state for the purpose of selling, offering for sale, or negotiating bonds or notes secured by deed of trust or mortgages on real property or choses in action, owned, issued, negotiated or guaranteed by it, or for the purpose of receiving any money or property, either from its own members or from other persons, and entering into any contract, engagement or undertaking with them for the withdrawal of such money or property at any time with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain."

Safe deposit companies are also defined.

Section 8 provides that:

"Every corporation and individual banker specified in section two of this chapter shall be subject to the inspection and supervision of the superintendent of banks"

—and the method of inspection and supervision is carefully detailed in the statute as well as restrictions imposed upon the various corporations.

Section 30 (now section 32, c. 2, Consol. Laws) provides that:

"No corporation to which this chapter is applicable shall be incorporated hereunder, or transact any business in this state other than such as relates to its formation, without the written approval of the superintendent of banks and without his written certificate stating that it has complied with the provisions of this chapter and with all the requirements of law, and that it is authorized to transact within this state the business specified therein, and that such business can be safely intrusted to it. * * *"

There are provisions for incorporating. Banks are required to have 5 or more incorporators, savings banks and trust companies 13 or more. Article 5 as amended by chapter 705, Laws 1894, provides:

"Section 170. Any fifteen or more persons of full age and residents of the state of New York, may form an association as provided in this act. All associations formed under the provisions hereof shall be known as co-operative savings and loan associations; and the name of every association so formed shall contain as a part thereof the words 'co-operative savings and loan association.'

"Sec. 171. The object and purpose of such associations shall be to encourage industry, frugality, home building and savings among its members; the accumulation of savings, the loaning of such accumulations to its members and the repayment to each member of his savings when they have accumulated to a certain sum, or at any time when he shall desire the same, or the association shall desire to repay the same."

Article 6, as amended by chapter 193 of the Laws of 1898, provides for the incorporation of building and lot associations, permitting five or more persons to so incorporate. The certificate must be approved by the superintendent of banks, and he is authorized to inspect and supervise. By section 200:

"The superintendent of banks shall issue a license to all associations, co-partnerships, joint stock companies or corporations organized under the laws of this state who shall offer for sale or negotiate bonds or notes secured by deed of trust or mortgage of real property situated outside of this state owned, issued or negotiated or guaranteed by them."

Article 7 added by chapter 452 of the Laws of 1896 (now article 8, c. 2, Consol. Laws), provides that five or more persons may become a mortgage loan or investment company. The amount of its capital

stock shall in no case be less than $100,000. The superintendent of banks shall issue his certificate of authorization when he is satisfied that the capital stock has been paid in cash, and upon his receiving a deposit of $1,000 to be held as a pledge of good faith and a guaranty of compliance with the banking law.

Section 199 (now 282, c. 2, Consol. Laws):

"General Powers: In addition to the powers conferred by the general and stock corporation laws, a corporation organized as provided in the two preceding sections shall have power to sell, offer for sale or negotiate bonds or notes secured by deed of trust or mortgages on real property situated in this state or outside of this state, or choses in action owned, issued, negotiated or guaranteed by it, or may receive money or property either from its own stockholders or other persons in installments or otherwise, and may enter into any contract, engagement or undertaking with such persons for the withdrawal of such money or property, at any time, with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain, excepting that said corporation cannot do a general deposit business without complying with the provisions of section fourteen of this chapter."

The Business Corporation Law (chapter 691, Laws 1892, chapter 671, Laws 1895, now chapter 12, Laws 1909; chapter 4 of the Consol. Laws) in section 2 provides:

"Except as provided in section 2a of this chapter, three or more persons may become a stock corporation for any lawful business purpose or purposes other than a moneyed corporation, or a corporation provided for by the banking, the insurance, the railroad and the transportation corporation laws, or an educational institution or corporation which may be incorporated as provided in the educational law, by making, signing, acknowledging and filing a certificate which shall contain," etc.

The General Corporation Law (chapter 687, Laws of 1892, now chapter 28, Laws of 1909; chapter 23 of the Consol. Laws) provides in section 10:

"No corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given."

Section 19, now section 22:

"No corporation except a corporation formed under or subject to the Banking Laws, shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying gold or silver bullion or foreign coins, or buying and selling bills of exchange, or shall issue bills, notes or other evidences of debt for circulation as money."

The Stock Corporation Law (chapter 68, Laws of 1892, now chapter Laws 1909; chapter 59 of the Consol. Laws) section 2 now section provides:

"addition to the powers conferred by the General Corporation Law every stock corporation shall have power to borrow money or contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and may issue and dispose of its obligations for any amount borrowed, and may mortgage its property and franchises to secure the payment of such obligations or of any debt contracted for the purposes herein specified."

The examination of the course of legislation respecting corporations in this state demonstrates that it is and has been the policy of the state to regulate and control the operations of certain kinds of corporations, with increasing strictness, by requirements of preliminary certificates and deposit of securities, and by frequent and detailed examination by public authorities. Certain powers, rights, and privileges extended to corporations incorporated under the Insurance and Banking Laws, and subject to the restrictions and supervision therein contained, are denied to ordinary business corporations which may be organized for the prosecution of any lawful business purpose, or purposes other than a moneyed corporation, or a corporation provided for by the Banking, the Insurance, the Railroad, the Transportation Corporation Law, or an educational institution. The powers conferred upon a business corporation, in addition to the general powers conferred upon all corporations incident to their existence as corporations, include the right to borrow money and contract debts when necessary for the transaction of its business, or in the exercise of its corporate right, or for any other lawful purpose of its corporation, and to issue and dispose of its obligations for any amount so borrowed. But this is in turn restricted by section 10 of the General Corporation Law, that no corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given, and by section 22, that no corporation, except a corporation formed under or subject to the Banking Law, shall, by any implication or construction, be deemed to possess the power of carrying on the business of discounting bills, notes, or other evidences of debt, of receiving deposits, or buying and selling bills of exchange, or shall issue other bills, notes or evidences of debt for circulation as money.

It is conceded upon this record that the defendant is a business corporation, organized and existing under the laws of this state, and not incorporated under the Banking Law.

Examination of the certificate, Exhibit A, discloses that it has attributes of certificates which can only be issued by either mortgage loan and investment corporations, co-operative savings and loan associations, or building lot corporations or savings banks. It also has some of the attributes appropriate to insurance policies. As correctly summarized by counsel for respondent:

"The feature of receiving moneys and paying interest is a power of a savings bank; the feature of accumulation of the savings and the repayment to the holder of the certificate when they have accumulated to a certain sum is a power incident to a co-operative savings and loan association. The object of the certificate in accumulating a fund for the purchase of real property and the privilege to the certificate holder of applying his payments toward the purchase of real estate are features of a building lot association; and the entire scheme of the instrument is clearly covered by the business of a mortgage loan or investment corporation."

If the certificate is compared with the section of the statute cited supra, as to the powers of the last-named corporation, it will be seen that it fits it like a glove.

The Legislature having, with great care, in the interest of the public for the purpose of protecting small investors who may be attracted

by the promise of future results based upon small installment payments, precisely prescribed what kind of corporations may do such business, and attempted to safeguard such business with the particularity illustrated by the statutes referred to, requiring preliminary certificates and continued supervision and inspection by state officers, would seem to have denied the power to mere business corporations to engage in similar enterprises even if the ingenuity of the promoters thereof succeeded in combining in one some of the incidents of many. To permit such a palpable evasion would be to declare the law feeble and futile.

In New York State Loan & Trust Co. v. Helmer, 77 N. Y. 64, Miller, J., said:

"The plaintiff only possessed such powers and franchises as were especially conferred by its acts of incorporation; and these must yield and be subject to the general provisions of the Revised Statutes, as is expressly provided by section 9 of the plaintiff's charter. The discounting of the notes by the plaintiff was an exercise of power which is expressly prohibited by law. The Revised Statutes (1 Edm. Ed. 557, § 4) declares that no corporation 'not expressly incorporated for banking purposes shall, by any implication or construction, be deemed to possess the power to discount bills, notes,' etc. As the plaintiff was not authorized to conduct the business of banking by its act of incorporation, this provision was a restriction upon its charter, and the discount of the notes in question was contrary to law. Such discount of the notes is also in conflict with other provisions of law against unauthorized banking. By section 3 (1 R. S. Edm. Ed. 661) it is declared: 'No incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed for the purpose of receiving deposits, making discounts or issuing notes, or other evidences of debt to be loaned or put into circulation as money.' By section 5: 'All notes and other securities for the payment of any money, or the delivery of any property made or given to any such association, institution or company, that shall be formed for the purpose expressed in the first section of this title, or made or given to secure the payment of any money loaned or discounted by any incorporated company, or its officers, contrary to the provisions of the third section of this title, shall be void.' These enactments are certainly very explicit, and in connection with others, some of which provide for the infliction of penalties for a violation of different provisions of the act, indicate quite clearly a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same. The Legislature having thus aimed to restrain illegitimate and improper banking, the courts are bound to carry out the law, and to see that it is not violated. And such has been the uniform course of decision when questions have arisen involving the construction to be placed upon statutory provisions relating to the subject of banking."

In People ex rel. Tiffany & Co. v. Campbell, 144 N. Y. 166, 38 N. E. 990, Andrews, C. J., said:

"The unexpressed and incidental powers possessed by a corporation are not limited to such as are absolutely or indispensably necessary to enable it to exercise the powers specifically granted. Whatever incidental powers are reasonably necessary to enable it to perform its corporate functions are implied with the powers affirmatively granted. Comstock, J., Curtis v. Leavitt, 15 N. Y. 64. But powers merely convenient or useful are not implied if they are not essential, and having in view the nature and objects of the incorporation."

It was there held that a corporation incorporated as a manufacturing corporation had no power to purchase and sell goods manufactured

by others. Cited with approval, Gause v. Commonwealth Trust Co.,. 196 N. Y. 134, 89 N. E. 476, 24 L. R. A. (N. S.) 967.

In Bath Gas Light Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664, Andrews, C. J., said:

"The modern doctrine, as stated by Chancellor Kent, is to consider cor- porations as having such powers as are specifically granted by the act of in- corporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any others. 2 Kent, Comm. 299. This doctrine is embodied in the Revised Statutes of New York, and the sec- tion relating to the subject is regarded as simply declaratory of the ante- cedent law. (1 R. S. 600, § 3). It has been frequently stated that the validity of contracts of corporations is to be determined by comparing the contract made with the charter, and if upon such comparison it appears that the con- tract was neither expressly authorized, nor a necessary or reasonable inci- dent to the exercise of the powers specifically granted, the contract is ultra vires. * * * Another principle of general recognition is that a corporation cannot enter into or bind itself by a contract which is expressly prohibited by its charter or by statute, and in the application of this principle it is imma- terial that the contract, except for the prohibition, would be lawful. No one is permitted to justify an act which the Legislature within its constitutional power has declared shall not be performed. The series of cases in this state, known as the Utica Insurance Cases, afford an apt illustration. It was held that the restraining acts which prohibited the exercise of banking powers, in- cluding the discount of paper, by other than banking corporations, rendered void securities taken on such discount by corporations not possessing banking powers, and this, although the object of the restraining laws seems to have been the protection of the chartered banks in the monopoly of banking."

Judge Vann in the same case said of a contract ultra vires and not malum prohibitum:

"While the contract is held to be void, the party who has received value un- der it is compelled to refund, after rescission by the other, either in an action at law for money had and received, or in a suit in equity to compel an ac- counting and restitution."

[2] The appellant claims that under the Stock Corporation Law it is entitled "to borrow money and contract debts when necessary for the transaction ·of its business, or for the exercise of its corporate rights, privileges, or franchises, or for any other lawful purpose of its incorporation, and it may issue and dispose of its obligations for any amount so borrowed," and that the instruments upon their face show that the money secured to be paid thereby was loaned to the ap- pellant, and so the transaction was well within the express powers of a business corporation. But the right to borrow is "when necessary for the transaction of its business * * * or for any other lawful purpose of its incorporation."

If its business is unlawful—that is, if it is engaged in a business as a business corporation which can only be conducted by a corpora- tion organized under the banking laws as indicated supra—this pro- vision does not aid it. Further, the statute expressly prohibits a cor- poration not formed under the Banking Law, "by any implication or construction," from carrying on the business "of receiving deposits." I am of the opinion that the certificates at bar evidence a deposit and not a loan.

Exhibit A is a certificate of deposit for the purpose of investment of a certain sum in monthly installments on which interest is to ac-

cumulate for 10 years, when it is to be repaid, principal and interest, by the payment of a fixed sum, and in addition thereto, "such portion of the profits of the company as shall be apportioned thereto by the directors thereof." It is not a certificate of a loan to the company because it provides for the accumulation of the interest and for participation in the profits, and specifically states that the money is received for investment. Being a receipt of money not by way of a loan, it is a deposit, as though the installments were paid into a building and loan association or deposited in a savings bank. Such deposits are for the benefit of the depositor. The money is indeed to be used by the depositary, but the earnings from such use go to the producing of the accumulation and compounding the interest. It is the promise of such results which induces the deposit. It is because of such promise and such use that the law throws its shield over such transactions, forbidding them except to the duly supervised and inspected instrumentalities.

In Chapman v. Lynch, 156 N. Y. 551, 51 N. E. 275, Haight, J., said:

"Section 13 of the act under which the corporation was organized provides that it shall be lawful for the corporation to borrow money for its legitimate purposes. It does not, however, authorize it to receive money upon deposit."

After alluding to the statutory provisions, the court proceeded:

"Here we have, in the first place, an express statutory provision prohibiting the corporation from exercising powers not given to it, which are not necessary for the exercise of the powers for which it was created; and, in the second place, an express prohibition against receiving deposits unless incorporated for banking purposes. Words could hardly be found that would make the meaning more clear. The American Dairy Salt Company, Limited, was a business corporation, organized for the manufacture of salt. It was incorporated under a statute which authorized the formation of business companies, was adapted for the purposes of such organizations, and contained none of the safeguards which have always been exacted and required of corporations authorized to do a banking business or the receiving of the money of others on deposit for safe-keeping or investment. We thus find a reason founded on public policy, for the prohibition contained in the statute referred to, applying to corporations not expressly incorporated under the statute providing for the incorporation of banks, which contains the safeguards exacted from such corporations which are to engage in the business of dealing with the money of others. It appears to us that the corporation, in accepting the funds of the plaintiff, in special account upon deposit, exceeded its corporate power and engaged in a business in which it was not authorized, and that, consequently, its contract with the plaintiff, if such was its nature, was ultra vires; if so, the plaintiff's right of action for the moneys delivered to the corporation at once accrued."

[3] So far as Exhibit C is concerned, upon which is based the third cause of action, this is clearly a certificate of deposit. Here the payment by plaintiff is in one sum, instead of installments in the two other certificates. It is not a certificate of stock nor a promissory note, for it does not provide for the payment of a fixed sum of money. It provides for the payment of 6 per cent. interest and a share in the profits of the company, such apportionment of profits to be determined by the directors of the company and to be conclusive. Such a provision destroys all pretense that it is a promissory note. The certificate may be

surrendered after two years for its full face value in cash, less 2 per cent. per annum for the unexpired time to maturity. The $100 was deposited with the defendant upon a contract which was, in terms, within the business defined by the Banking Law as that of a mortgage loan and investment corporation; said law requiring that a company transacting such business must be incorporated under said law.

[4] As the doing of the business evidenced by these certificates was ultra vires the corporation, the plaintiff has a right of action for money had and received for the amounts paid and deposited by him. Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Curtis v. Leavitt, 15 N. Y. 9; Sacketts Harbor Bank v. Codd, 18 N. Y. 240; De Groff v. American Linen Thread Co., 21 N. Y. 124; Oneida Bank v. Ontario Bank, 21 N. Y. 490; Irwin v. Curie, 171 N. Y. 409, 64 N. E. 161, 58 L. R. A. 830.

The determination of the Appellate Term should be affirmed, with costs and disbursements to the respondent.

SCOTT and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). The exact nature of the business the defendant is organized to transact is not alleged, although it may be inferred from its title that its principal business is to deal in real estate. Plaintiff rests his right to recover upon the fact that defendant is a business and not a banking corporation. By certificate A, in consideration of the annual payment of $107.36 or the sum of $9.20 monthly in advance during 10 years from date, defendant promises to pay $1,500, and "in addition thereto such portion of the profits as the directors of the company may consider just and equitable." Under the head of "Privileges and Provisions," the following appears:

"The payments on this certificate being accepted by the company for investment in business, not for deposit, the owner has the following privileges of surrender before maturity."

Among these privileges are the following: (1) To use the payments, with accrued interest, in the purchase of real estate from the company; (2) on and after the second payment, to receive a paid-up certificate payable at the maturity date of the original certificate, or to receive cash according to a cash value set forth in a table annexed; (3) in the event of the owner's death and at the election of his representatives, to cease further payments, and to receive the total amount of the sums already paid, with 4 per cent. interest. The certificate also contains provisions against forfeiture and entitling a defaulting holder, under certain circumstances, to a paid-up certificate for a prescribed amount. It also reserves to the company the right to mature and terminate the certificate under said conditions upon payment of a fixed sum. Certificate B, while different from A in certain respects, is not substantially different so far as the questions herein involved are concerned. C. is known as a "paid-up certificate," in which, for value received, defendant at the expiration of 10 years from date promises to pay a certain fixed sum, with 6 per cent. interest, and in addition thereto "a share in the profits of the company, such a portion of

the profits to be determined by the directors thereof." It also reserves to the company, after the expiration of five years, the right to terminate the certificates on payment of its face value, "together with such proportionate share of the profits up to the time of such cancellation as shall be determined by the directors," and it gives to the owner the privilege to surrender the certificate after two years from date, whereupon the company is to pay therefor at "its face value in cash, less two per cent. per annum for the unexpired time to the maturity" of the certificate. The owner is also given the privilege to apply the amount of the certificate in the purchase of real estate from the company. The allegation that the defendant is a domestic business corporation necessarily implies that it is a stock corporation (Bus. Corp. L. art. 2, § 2. As a business corporation, and except as provided in section 2a of that law, it is entitled to pursue—

"any lawful business, purpose or purposes other than a moneyed corporation or a corporation provided for by the banking, the insurance, the railroad and the transportation corporation laws." Bus. Corp. Law, § 2.

By the Stock Corporation Law (article 2, § 6), in addition to the powers conferred upon it by the General Corporation Law, it has—

"power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed."

Among other restrictions to which it is subject, it may not lawfully carry "on the business of discounting bills, notes or other evidences of debt, or receiving deposits," or otherwise engage in business commonly transacted by banks. Gen. Corp. Law, § 22. Nor may it, "exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given." Gen. Corp. Law, § 10.

I think the contention that either of the transactions was a deposit of money is untenable. There is no allegation of any fact from which a deposit may be inferred, and there is nothing in either certificate which would import a deposit. On the contrary, as pointed out by Mr. Justice Page in his dissenting opinion in the court below, the transactions, as evidenced by the several certificates, involve all of the essential features of a loan. Certificates A and B state on their face that the moneys are received by the company "for investment in business, not for deposit." It may be that these certificates have certain features analogous to obligations which may be entered into by cooperative, savings and loan asociations, or by mortgage, loan or investment corporations; which are "money corporations," and may be lawfully incorporated, and transact business only under the provisions. of the Banking Law (section 2). But it is very evident that many of the powers conferred upon such corporations, so far as they affect the terms upon which they may receive money from their members, are likewise an incident to the power to borrow money expressly conferred on ordinary business corporations; and, while it may be the fact that the chief purpose of this defendant is the sale of its obligations to the public and the transaction of a business analogous to one which may be lawfully conducted only under the provisions of the

Banking Law, it is impossible to say, on the record before us, that the transactions evidenced by these certificates, or any of them, necessarily amount to anything more than a borrowing by defendant of money "necessary for the transaction of its business," as a real estate company, in consideration of which it is issuing its promises to pay, in a form somewhat unusual, it is true, but one not prohibited by law.

The quotation from the annual report of the superintendent of banks for the year 1912, to which we are referred in the brief of the learned counsel for the appellant, leads to the belief that the superintendent (and presumably his advisers) have reluctantly come to the same conclusion which they, in common with myself, have been forced to reach because of the necessarily broad provisions of the Business Corporations Law with respect to the borrowing of money, and the corresponding latitude concerning the terms of such borrowing which must necessarily follow the right to borrow. Although any construction of this latter law which will permit unscrupulous persons to use it to circumvent the Banking Law is greatly to be deplored, our eagerness to prevent such an abuse should not betray us into an interpretation which may cast doubt on a great volume of legitimate obligations which have been issued, by bona fide real estate and other business corporations, in a variety of forms different from such as are used to evidence the ordinary loan, but which in some of their provisions may be similar to the obligations which some of the companies authorized to do business under the Banking Law have the right to issue.

The order appealed from should be reversed, with costs, and the motion denied with costs.

INGRAHAM, P. J., concurs.